```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

TEST MASTERS EDUCATIONAL §
SERVICES, INC., §
 §
    Plaintiff, §
 §
v. § CIVIL ACTION NO. H-13-1706
 §
STATE FARM LLOYDS, §
 §
    Defendant. §

## MEMORANDUM AND ORDER

Pending are Plaintiff Test Masters Educational Services, Inc.'s Motion for Summary Judgment (Document No. 5) and Defendant State Farm Lloyds Company's Motion for Summary Judgment (Document No. 12). After considering the motions, responses, replies, oral arguments, and applicable law, the Court concludes as follows.

### I. Background

Plaintiff Test Masters Educational Services, Inc. ("Plaintiff") offers test-preparation services for standardized exams, including the SAT, PSAT, GMAT, GRE, and LSAT.[1] Although Plaintiff alleges that Defendant State Farm Lloyds Company ("Defendant") issued business liability insurance policies to Plaintiff since 2001, Plaintiff stated during oral arguments that

---

[1] Document No. 4 ¶ 4 (1st Am. Compl.).

Plaintiff's claim in this case that Defendant has a duty to defend the underlying case, is based only on Defendant's policies issued from 2007 through 2009, insuring Plaintiff against allegations that Plaintiff committed a form of advertising injury specifically defined as infringement of trade dress. Defendant's 2007-09 policies required Defendant to pay "those sums that the insured becomes legally obligated to pay as damages because of . . . advertising injury to which this insurance applies," and state that Defendant "will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent."[2]

In June 2008, Plaintiff filed the underlying lawsuit, Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc., Civ. A. No. 4:08-cv-01771 (consolidated with Civ. A. No. 4:11-cv-02035), ("Test Masters III"). Test Masters III was the latest in a series of Plaintiff's lawsuits brought by and against Robin Singh Educational Services, Inc. and Robin Singh (collectively "Singh") that had gone on for a decade.[3] Test Masters III, which was

---

[2] Document No. 5, ex. C-1 at 42 of 59; id., ex. C-2 at 47 of 64.

[3] Document No. 4 at 4 n.2. These disputes have been heard by the Fifth Circuit multiple times. See Test Masters Educ. Servs. v. Singh, 46 F. App'x 227, 2002 WL 1940083 (5th Cir. 2002) ("Test Masters I"); Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559 (5th Cir. 2005) ("Test Masters II"). See also Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc., 274 F. App'x 399 (5th Cir.

assigned to the Honorable Nancy Atlas of this Court, alleged trademark infringement and various other claims. Singh filed counterclaims ("the Original Counterclaims") against Plaintiff in that suit.[4] Singh, who also uses the "Test Masters" name, alleged in his counterclaims that Plaintiff's website, www.testmasters.com, purported to offer LSAT preparation courses across the country under the "Test Masters" name and mark, mimicked a map on Singh's website, and made material misrepresentations in an effort to trick consumers into believing that Plaintiff's services were associated with Singh's.[5] Plaintiff tendered the Original Counterclaims to Defendant, and Defendant, with a reservation of rights, agreed to pay for their defense.[6]

---

2008) (suit brought by Singh against Excel Test Prep, Inc., a company co-owned by Plaintiff's founder Haku Israni and members of his immediate family).

[4] Document No. 4 ¶ 7.

[5] See Document No. 5, ex. D ¶¶ 79-81, 105, 107, 113. Defendant listed eleven separate causes of action in his Counterclaims: (1) trademark infringement under Section 43(a) of the Lanham Act; (2) unfair competition under Section 43(a) of the Lanham Act; (3) trademark infringement under California common law; (4) infringement of a registered mark under California statutory law; (5) violation of California Business and Professions Code § 17200; (6) trademark infringement and unfair competition under District of Columbia common law; (7) trademark infringement and unfair competition under New York common law; (8) violation of New York General Business Law § 133; (9) trademark infringement and unfair competition under Florida common law; (10) violation of Florida Deceptive and Unfair Trade Practices Act; and (11) right to registration under 15 U.S.C. § 1119 and 28 U.S.C. § 2201. Document No. 5, ex. D ¶¶ 120-183.

[6] Document No. 4 ¶ 8; Document No. 5, ex. F at 5 of 12.

Judge Atlas stayed the underlying case in 2008, and lifted the stay in June 2011. At that time Singh filed amended counterclaims ("the Amended Counterclaims") against Plaintiff.[7] The Amended Counterclaims dropped the accusation that Plaintiff had mimicked Singh's map and never accused Plaintiff of causing Singh advertising injury by infringing upon Singh's "trade dress," but charged that Plaintiff "made misleading modifications to its website in 2003 falsely claiming that it offered nationwide LSAT test preparation services under the TESTMASTERS name and mark," and that Plaintiff "made knowingly false statements of fact in direct communications with consumers."[8] It was the previously alleged infringement of the map on Singh's website that Defendant believed might possibly assert a claim of advertising injury by trade dress infringement. Plaintiff tendered the Amended Counterclaims to Defendant and Defendant continued to provide a defense for approximately eight months.[9] In February 2012, however, Defendant withdrew its defense because "[t]he lack of any alleged trade dress

---

[7] Document No. 4 ¶ 10; Test Masters III, Civ. A. No. 4:08-cv-01771, Document Nos. 36 and 44.

[8] Document No. 5, ex. E ¶¶ 43, 49. The Amended Counterclaims listed the same eleven causes of action as the Original Counterclaims, and added an additional cause of action for consumer fraud under New York statutory law. Id., ex. E ¶¶ 99-105.

[9] Document No. 4 ¶ 11; see also Document No. 5, ex. F at 2 of 12.

4

infringement [in the Amended Counterclaims] means there is no potential coverage under TES' policy for the Counterclaim."[10]

This suit is for breach of contract, and for a declaratory judgment that Defendant has a duty to defend against the Amended Counterclaims.[11] Plaintiff and Defendant both move for summary judgment.[12]

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated

---

[10] Document No. 4 ¶ 11; Document No. 5, ex. F at 11 of 12 to 12 of 12. In April, 2013, Judge Atlas granted Singh's Motion for Summary Judgment as to the Mark being descriptive and as to Plaintiff's infringement claims, and granted Plaintiff's Motion to Dismiss or for Partial Summary Judgment as to Singh's infringement counterclaims. Test Masters Educ. Servs., Inc. v. Singh, Civ. A. No. H-08-1771, 2013 WL 1404816, at *14 (S.D. Tex. April 5, 2013) (Atlas, J.). That decision is now on appeal to the Fifth Circuit.

[11] Document No. 4 ¶¶ 14-15.

[12] Document Nos. 5 and 12.

assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a

6

motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III. <u>Analysis</u>

A. <u>The Eight Corners Rule</u>

Texas follows the Eight Corners Rule, under which courts determine an insurer's duty to defend by considering only the pleadings and policy language. <u>Burlington N. and Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 334 S.W.3d 217, 219 (Tex. 2011). Pleadings are liberally construed and all doubts are resolved in favor of the duty. <u>Zurich Am. Ins. Co. v. Nokia, Inc.</u>, 268 S.W.3d 487, 491 (Tex. 2008). Courts are to focus on the factual allegations in the pleading, and not on the asserted legal theories. <u>Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 142 (Tex. 1997). If the complaint potentially includes one covered claim, the insurer must defend the entire suit. <u>Zurich</u>, 268 S.W.3d at 491.

B. <u>Infringement of Trade dress</u>

Plaintiff's insurance policy with Defendant obligates Defendant to pay "those sums that the insured becomes legally obligated to pay as damages because of . . . advertising injury to

7

which this insurance applies."[13] As observed above, Plaintiff relies only on Defendant's policies in effect from February 2007 to February 2009, and stated during oral argument that the only definitions of advertising injury that apply are the following:

> **DEFINITIONS**
>
> Under **DEFINITIONS**, **advertisement** is added and **advertising injury** and **personal injury** are replaced with the following:
>
>> **advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>>
>> a. notices that are published include material placed on the internet or on similar electronic means of communication; and
>>
>> b. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement;
>>
>> **advertising injury** means injury arising out of one or more of the following offenses:
>>
>> * * *
>>
>> d. infringing upon another's copyright, trade dress or slogan in your **advertisement**;

Plaintiff contends that the last quoted definition--"infringing upon another's . . . trade dress . . . in your advertisement"--

---

[13] Document No. 5, ex. C-1 at 42 of 59; id., ex. C-2 at 47 of 64.

8

applies because Singh cites Section 43(a) of the Lanham Act in the Amended Counterclaims, 15 U.S.C. § 1125(a)(1), and that allegations that Plaintiff "combin[ed] the use of a similar website, use of the name and mark, and allegedly false claims about the geographical scope of [Plaintiff's] live classes" constitute allegations of trade dress infringement.[14]

The statutes cited in the Amended Counterclaims encompass considerably more than just trade dress infringement[15] and, more importantly, the presence of a statutory citation alone is not sufficient to trigger coverage. See Merchants Fast Motor Lines, 939 S.W.2d at 141 (in analyzing the underlying pleadings, the Court is to "focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.").

At oral argument, Plaintiff responded that it was specifically relying on the factual allegations in paragraphs 17, 51-53, and 60

---

[14] Document No. 34 at 7-9, 11.

[15] See Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1383 (5th Cir. 1996) (Section 43(a) of the Lanham Act "provides protection against a myriad of deceptive commercial practices, including false advertising or promotion.") (quotations omitted); 15 U.S.C. § 1125(a)(1) (providing protection against the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake, or to deceive" as to the source of a product or "misrepresents the nature, characteristics, qualities, or geographic origin" of goods, services, or commercial activities). See also Document No. 34 at 12 ("[T]he counterclaims also include a more general claim for 'unfair competition' under California, Florida, New York and District of Columbia law . . . .").

of the Amended Counterclaims to demonstrate that under the Eight Corners rule Singh had alleged an advertising injury caused by Plaintiff infringing Singh's trade dress. Paragraph 17 alleges that Plaintiff "changed its website so that it was confusingly similar to Singh's, purporting to offer LSAT preparation courses in every state, although [Plaintiff] had never before offered LSAT courses anywhere, and had never before offered any test preparation courses outside of the state of Texas."[16] In paragraph 51 Singh alleges that Plaintiff "represents on its website that it offers live LSAT classroom courses in 100 cities and in all 50 states," but that for 99 of those cities, consumers who click on the specific link are informed that Plaintiff is no longer offering classroom LSAT courses in that location, and are encouraged to sign up for Plaintiff's online course instead.[17] Singh alleges in paragraph 52 that this statement is misleading because Plaintiff has never offered or held a classroom LSAT course in 94 of those 99 cities, and that "[b]y representing that it has, and that it has taught thousands of LSAT students, consumers are tricked into believing they have reached Singh, who has actually conducted and continues to offer live LSAT classroom courses in the majority of these cities."[18] Singh alleges in paragraph 53 that Plaintiff

---

[16] Document No. 5, ex. E ¶ 17.

[17] Id., ex. E ¶ 51.

[18] Id., ex. E ¶ 52.

intentionally "mislead[s] students who are looking for Singh to believe the live courses are no longer available and encourage enrollment into the online course," and that "[o]nce students commit to the online course, they cannot obtain a refund after they discover they have enrolled with the wrong TestMasters."[19] Finally, paragraph 60 alleges that Plaintiff's actions "as described above (in particular, [Plaintiff's] use of the TESTMASTERS name and mark and testmasters.com domain name) are likely to cause confusion, mistake, or deception . . . and thus constitute trademark infringement and false designation of origin in violation of Section 43(a) of the Lanham Act."[20]

"The 'trade dress' of a product is essentially its total image and overall appearance." Blue Bell Bio-Medical v. Cin-Bad, Inc., 864 F.2d 1253, 1256 (5th Cir. 1989). See also KLN Steel Prods. Co., Ltd. v. CNA Ins. Cos., 278 S.W.3d 429, 441 (Tex. App.-San Antonio 2008, pet. denied) (Trade dress "consists of the total image of a product or service, including product features such as design, size, shape, color, packaging labels, and color combinations.") (internal quotations omitted). The Amended Counterclaims allege that Plaintiff's website was "confusingly similar" to Singh's because of the use of the Test Masters Mark and

---

[19] Id., ex. E ¶ 53.

[20] Id., ex. E ¶ 60.

Plaintiff's list of putative nationwide course locations, but does not allege any facts regarding any inherently distinctive "look and feel"--or "trade dress"--of the website. Absent some allegation of aesthetic similarity to another's advertisement, a claim that defendant infringed a trademark does not itself comprise a claim for trade dress infringement. See <u>Am.'s Recommended Mailers Inc. v. Md. Cas. Co.</u>, 339 F. App'x 467, 469 (5th Cir. 2009) ("While the AARP has alleged that Mailers inappropriately used the AARP's trademark in a deceptive manner, the AARP is not challenging the shape, design, color scheme, or any other aesthetic aspect of the cards or the similarity of Mailer's cards to any other advertisements for financial products. The AARP is only challenging the fact that Mailers used the AARP name on its cards. This is not a trade dress claim.").

Plaintiff argues that in addition to the use of the Mark, Singh alleges that Plaintiff made misrepresentations about its services, and that these allegations combine to constitute a claim of trade dress infringement. While the Amended Counterclaims do allege that Plaintiff's website was "confusingly similar" to Singh's because Plaintiff copied some of Singh's course locations and purported to have taught "thousands of LSAT students," this allegation says nothing about the distinctive aesthetics of Plaintiff's website as compared to Singh's.[21] Plaintiff does not

---

[21] See Document No. 5, ex. E ¶¶ 17, 51-53.

argue that a business owner's internet advertisement of the locations in which he actually does business constitutes trade dress and, likewise, an internet advertisement falsely listing one's business locations is not an infringement of another's protectable trade dress. Furthermore, even if a list of locations where courses are claimed to be offered were considered such a distinctive identifying feature of a business as to constitute trade dress, the Amended Counterclaims do not allege that Plaintiff copied Singh's course locations as advertised by Singh. Instead, Singh alleges that Plaintiff falsely advertises that Plaintiff offers live courses in 94 cities Plaintiff lists on its website where in fact Plaintiff has never offered live courses and that Singh in fact has and does offer live classroom courses "in the majority of these [94] cities."[22]

In sum, the factual allegations made by Singh in his Amended Counterclaims provide no possible basis for a claim--even a groundless, false, or fraudulent claim--of trade dress infringement by Plaintiff. Because the Amended Counterclaims do not trigger any potential coverage for advertising injury caused by infringement of trade dress, as defined in the 2007 to 2009 Policies, Defendant is entitled to summary judgment.

---

[22] Id., ex. E ¶¶ 51-52.

IV. Order

For the foregoing reasons, it is

ORDERED that Plaintiff Test Masters Educational Services, Inc.'s Motion for Summary Judgment (Document No. 5) is DENIED, Defendant State Farm Lloyds Company's Motion for Summary Judgment (Document No. 12) is GRANTED, Plaintiff shall take nothing on its claims against Defendant, and this case is DISMISSED on the merits.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 23rd day of June, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE